**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA**

| | | |
|---|---|---|
| RAY C. PATRICK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | 1:06-cv-0870-DFH-TAB |
| | ) | |
| JASON R. WOJDYLO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**Entry Discussing Motion for Summary Judgment**

This is a civil rights action in which the plaintiff alleges that the defendants failed to supply him with needed medicine while the plaintiff was in their custody and in which the defendants seek resolution of the plaintiff's claims through the entry of summary judgment. As used in this Entry, "Patrick" refers to plaintiff Ray Patrick, "Jail" refers to the Marion County Jail, "Deputy Wojdylo" refers to Supervisory Deputy United States Marshal Jason Wojdylo, "DSO Rowe" refers to District Security Officer ("DSO") Kenneth Rowe, "BOP" refers to the Federal Bureau of Prisons, "USMS" refers to the United States Marshals Service, and "FCC" refers to the Federal Correctional Complex in Terre Haute, Indiana.

Whereupon the court, having considered the pleadings and the motions for summary judgment and responses thereto, as well as the evidentiary record, and being duly advised, finds that the motion for summary judgment must be **granted.** This conclusion is based on the following facts and circumstances:

1. "Summary judgment is appropriate where the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Westra v. Credit Control of Pinellas,* 409 F.3d 825, 827 (7th Cir. 2005) (quoting Rule 56(c) of the *Federal Rules of Civil Procedure*). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute is genuine only if a reasonable jury could find for the non-moving party. *Id.* "'It is well-settled that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered.'" *Sanders v. Village of Dixmoor,* 178 F.3d 869, 870 (7th Cir. 1999) (quoting *Liberles v. County of Cook,* 709 F.2d 1122, 1126 (7th Cir. 1983)).

2.     Patrick's claim asserting the violation of his federally secured rights is asserted pursuant to the recognized theory in *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388 (1971). The court has jurisdiction over such claims through 28 U.S.C. § 1331. However, a prerequisite to maintaining an action under 28 U.S.C. § 1331 is that the plaintiff "must allege a violation of the United States Constitution or a federal statute." *Goulding v. Feinglass,* 811 F.2d 1099, 1102 (7th Cir.), *cert. denied,* 107 S. Ct. 3215 (1987).

3.     "[I]n certain limited circumstances the Constitution imposes upon the State affirmative duties of care and protection with respect to particular individuals." *DeShaney v. Winnebago County Dept. of Social Services,* 489 U.S. 189, 198 (1989). "The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf." *Id.,* 489 U.S. at 200. Thus, society must be prepared to pay a price in our society for depriving those convicted of crimes of their liberty. The Eighth Amendment protects prisoners from deliberate indifference to their serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 104-105 (1976); *Zentmyer v. Kendall County, Ill.,* 220 F.3d 805, 810 (7th Cir. 2000). This protection includes situations where prisoners are denied access to necessary medical care, or where officials excessively delay access to such care. To succeed on a claim of deliberate indifference to medical needs, a prisoner must satisfy both prongs of a two-part test: (1) that the medical need was objectively serious, and (2) that the official was deliberately indifferent, or knew of and disregarded an excessive risk to the inmate's health. *See Farmer v. Brennan,* 511 U.S. 825, 834-37 (1994).

4.     The evidentiary record pertinent to Patrick's custody and medical care, insofar as pertinent to his claim in this case, shows the following:

   a.     Patrick was named as a defendant in a prosecution brought in this District and docketed as TH 05-CR-0021-01 M/L. The court appearance and transportation of Patrick described below occurred in connection with that case. In that case, Patrick was charged with having violated 18 U.S.C. § 111 (a) and (b) by assaulting a correctional officer while confined at the FCC. Patrick pled guilty to that charge and was sentenced on April 21, 2006. The court appearance and transportation of Patrick described below occurred in connection with TH 05-CR-0021-01 M/L.

   b.     Following his plea of guilty in TH 05-CR-0021-01 M/L, Patrick was scheduled to be sentenced in Terre Haute, Indiana, but the location of that proceeding was changed to Indianapolis. The USMS was ordered to produce Patrick at the sentencing.

   c.     Deputy Wojdylo dispatched contract DSO Rowe and DSO John Wesslar ("the DSOs") to travel from Indianapolis, Indiana to Terre Haute, Indiana to retrieve Patrick from the FCC Terre Haute, so that Patrick could be present for the sentencing hearing.

    d.    It is the policy of the BOP when an inmate with regular prescription needs is scheduled to be transported out of a BOP facility to provide a seven day supply of the inmate's prescriptions to be transported with the inmate. The purpose of the BOP's policy to supply prescriptions for transport is to allow for the continuation of the prescriptions while in transit and to provide some medications until the inmate gets to his destination and contacts medical resources to direct his medication needs. The prescription medications are given to BOP custody staff and then to the law enforcement officers responsible for transporting the inmate.

    e.    Consistent with the BOP policy just described, prescription medications were filled in anticipation of Patrick's departure. These medications were passed to the DSOs, as was Patrick himself.

    f.    Patrick was taken to Indianapolis, where the sentencing in TH 05-CR-0021--01 M/L was conducted.

    g.    At the conclusion of the sentencing hearing, Patrick could not immediately be returned to the FCC Terre Haute. The USMS has a contract with the Marion County Jail to provide custodial services for federal detainees and inmates including food, housing, and medical services as needed. The USMS management made a decision to place inmate Patrick in the Jail, a contract custodial facility, until he could be returned to the FCI.

    h.    With DSO Wesslar being unable to assist in transporting Patrick to the Jail, Deputy Wojdylo and DSO Rowe escorted Patrick to the Jail. During the transfer to the Jail on April 21, 2006, Deputy Wojdylo personally took possession of the medication packet sent with Patrick by the FCC, and delivered it to the Medical Unit at the Jail while DSO Rowe processed Patrick through the Jail intake process.

    i.    Patrick never asked DSO Wesslar, DSO Rowe, or Deputy Wojdylo for any medication while he was in their custody on April 21, 2006. The medicines sent by the BOP for Patrick did not require any administration, nor were there any doctor's orders requiring Deputy Wojdylo or DSO Rowe to administer any of his medications during the time that he was in their custody on April 21, 2006. Further, while Patrick was in the custody of the Marion County Jail personnel from April 21, 2006 to April 26, 2006, Patrick neither requested any medication from Defendants Wojdylo or DSO Rowe, nor advised Defendants Wojdylo or Rowe that he was not receiving medication while housed at the Jail.

    j.    On April 26, 2006, DSOs Wesslar and Rowe picked up Patrick from the Jail and transported him to Terre Haute, Indiana, where he was returned to the custody of the BOP. Patrick suffered no medical emergencies during the return transport trip to Terre Haute, and was returned to the custody of the BOP without incident and in good medical condition. Patrick was given a medical screening upon his return to the FCC by Nurse Dory Reagan. On April 26, 2006, Patrick did not complain to the intake medical staff about being ill or injured, nor did he complain about not receiving necessary medications.

k. Patrick did not ask Deputy Wojdylo for any medications between April 21, 2006 through April 26, 2006, and Deputy Wojdylo did not deny inmate Patrick any of his medications.

l. Patrick did not ask DSO Rowe for any medications between April 21, 2006 through April 26, 2006, and DSO Rowe did not deny inmate Patrick any of his medications.

m. Neither Deputy Wojdylo nor DSO Rowe was personally involved in the distribution of medications to inmates at the Jail.

5. Patrick's claim in this case is that Deputy Wojdylo and DSO Rowe violated his constitutional rights because they placed him in the Jail from April 21, 2006, through April 26, 2006, where he alleges that he did not receive his prescribed medication. His more specific claim is that Deputy Wojdylo and DSO Rowe did not deliver his medication to the Jail on April 21, 2006, and that the medication which was supposed to be delivered with him was then not dispensed to him while at the Jail.

6. The only specific portion of the factual recitation in paragraph 4 which Patrick disputes is the assertion in paragraph 4.h. that Deputy Wojdylo personally took possession of the medication packet sent with Patrick by the FCC and delivered it to the Medical Unit at the Jail while DSO Rowe processed Patrick through the Jail intake process.

a. The foregoing statement is supported by Deputy Wojdylo's affidavit, setting forth his statement in a fashion which satisfies the personal knowledge requirement of Rule 56(e) of the *Federal Rules of Civil Procedure*. Patrick has disputed the foregoing statement only with his *narrative* statement.

b. This narrative statement is inadequate to create a genuine issue of fact as to whether the medication was actually delivered to the Jail for two reasons: *First,* the statement is not made under oath, and thus may elucidate the issues but cannot serve as the basis for creating an issue of fact. *Bell v. United Princeton Properties, Inc.,* 884 F.2d 713, 720 (3d Cir. 1989) ("[S]tatements made in briefs are not evidence of the facts asserted."); *see also National Soffit & Escutcheons, Inc., v. Superior Systems, Inc.,* 98 F.3d 262, 268 (7th Cir. 1996) (nonmovant's opposition to motion for summary judgment raised more issues and posed additional questions, but included no counter affidavits or exhibits which might have raised a genuine issue of material fact). The consequence of this is that Patrick's opposition to the motion for summary judgment, which was not signed under oath, has no evidentiary significance. See *Gilty v. Village of Oak Park,* 919 F.2d 1247, 1255 n.13 (7th Cir. 1990) (explaining that statements that are "neither notarized nor made under penalty of perjury [do] not comply with Rule 56(e) . . . As such, we can simply ignore them."). Patrick's statement is not an affidavit. *Pfeil v. Rogers,* 757 F.2d 850, 862 (7th Cir. 1985) ("'An affidavit is a statement reduced to writing and the truth of which is sworn to before someone who is authorized to administer an oath.'") (quoting *Farm Bureau Mut. Auto Ins. Co. v. Hammer,* 83 F.Supp. 383, 386 (W.D.Va.), *rev'd. on other grounds,* 177 F.2d 793 (4th Cir. 1949), *cert. denied,* 339 U.S. 914 (1950)). *Second,*

4

the statement itself is not based on Patrick's personal knowledge, even if it had been presented in the form of an affidavit, but is based on his speculation, and "[m]emorializing mere speculation in the form of an affidavit does not convert the speculation into competent evidence," *Gonzalez v. Litscher,* 230 F.Supp.2d 950, 962 (W.D.Wis. 2002), for "[t]he object of [Rule 56(e)] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan v. National Wildlife Federation,* 497 U.S. 871, 888 (1990). The speculation Patrick offers here is that, because staff at the Jail did not find medication which was supposed to be sent with Patrick by the BOP, the defendants failed to deliver the medication to the Jail. Speculation as to why the Jail staff did not have the medication sent by the BOP does not support an inference that the defendants failed to deliver that medication as their evidentiary materials indicate.

c.     The documentary materials appended to Patrick's narrative statement do not lead to a different conclusion for reasons similar to the above. The documents appear to be medical records from the Jail, but are not authenticated and hence may not be considered. *McKinney v. Duplain,* 463 F.3d 679, 691 n.5 (7th Cir. 2006)("district courts should thoroughly consider challenges to the admissibility of evidence before ruling on summary judgment motions, as 'when acting on a motion for summary judgment, the judge [should] consider[ ] only evidence that would be admissible at trial.'")(quoting *Gustovich v. AT&T Communications, Inc.,* 972 F.2d 845 (7th Cir. 1992))*; Woods v. City of Chicago,* 234 F.3d 979, 988 (7th Cir. 2000) (noting that court may consider "properly authenticated and admissible documents or exhibits" in evaluating a motion for summary judgment); *Hal Roach Studios v. Feiner,* 896 F.2d 1524, 1550 (9th Cir. 1989)("It is well established that unauthenticated documents cannot be considered on a motion for summary judgment."); 10A Charles Alan Wright et al., *Federal Practice & Procedure* § 2722, at 379-80 & 382-84 (1998) ("Rule 56(e) requires that sworn or certified copies of all papers referred to in an affidavit must be attached to or served with that affidavit . . . . To be admissible, documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence."). Even looking past this to the content of these documents, moreover, the documents do not negate the statements in Deputy Wojdylo's affidavit that he delivered medication for Patrick to the Jail's Medical Unit on April 21, 2006.

7.     Although Patrick disputes a critical portion of the defendants' evidentiary showing, he does not do so in a manner which creates a genuine issue of fact. "[A] party's failure to comply with summary judgment evidentiary requirements is traditionally remedied . . . by excluding the non-conforming submission and deeming the opposing party's proposed findings of fact admitted and then determining whether those facts entitle the moving party to judgment as a matter of law." *Ziliak v. AstraZeneca LP,* 324 F.3d 518, 520 (7th Cir. 2003) (citing cases). There is no reason to stray from the traditional remedy in this case.

      8.      There is no doubt that Patrick was entitled to certain constitutional protections while he was confined at the Jail, including constitutionally adequate medical care. He has not, however, come forward with a genuine issue for trial as to whether the defendants carried out their obligation to supply the Jail with the medication supplied by the BOP. *Liberles v. County of Cook,* 709 F.3d 1122, 1126 (7th Cir. 1983) ("It is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered."). "Summary judgment is not a discretionary remedy.  If the plaintiff lacks enough evidence, summary judgment must be granted." *Jones v. Johnson,* 26 F.3d 727, 728 (7th Cir. 1994), *cert. granted* 513 U.S. 1071 (1995). That is precisely the situation with respect to the present case, and the defendants' motion for summary judgment must therefore be **granted**.

      Judgment consistent with this Entry shall now issue.

      So ordered.

*[signature: David F. Hamilton]*

DAVID F. HAMILTON, Chief Judge
United States District Court

Date: 2/11/2008